CONNER v. STUMPP & WALTERS CO.

(District Court, S. D. New York. June 20, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—POULTRY FEEDER AND EXERCISER.

The Whitten patent, No. 513,747, and the Conner patent, No. 886,580, each for a poultry feeder and exerciser, and capable of conjoint use in the same machine, both disclose invention and are valid; also *held* infringed.

In Equity. Suit by William M. Conner against the Stumpp & Walters Company. On final hearing. Decree for complainant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Seymour, Seymour & Megrath, of New York City (John S. Seymour, of New York City, of counsel), for complainant.

E. W. Marshall, of New York City, for defendant.

MAYER, District Judge. The complainant is the owner, by assignment dated January 4, 1908, and recorded January 11, 1910, of the Whitten patent, No. 513,747, granted January 30, 1894, and of the Conner patent, dated May 5, 1908, for an improvement on the Whitten invention, both inventions being used jointly by complainant in the same machine. The inventions under consideration relate to poultry feeders and exercisers. This art has grown important and practical, and in its development is but another illustration of the improvement constantly making in many directions. It is recognized that poultry, when housed, do not get the necessary exercise if their feed is obtained without effort, and that feed, if carelessly scattered, constitutes quite an item of waste in an industry where the figuring is close. For many years inventors have devoted their thought to devising useful and economical machines for feeding live stock;[1] but so far as this record discloses, one Xevers (letters patent No. 701,121, May 27, 1902), was the first to think of constructing a combined feeder and exerciser for poultry. The ideal result sought to be attained in this art was a machine so constructed as to assure economy in the use of poultry feed, automatic operation of the machine by the action of the poultry, and protection against rain, mice, and birds.

I have not discovered anything in the record which shows that the Xevers was ever a commercial article and an examination of the letters patent will show that in the Xevers the feed is not protected from rain, mice, and birds, and that there are different means for feeding from those employed in the Whitten and in the Conner. The Barnes patent (No. 838,161) is substantially on the same principle as the Xevers and has substantially the same defects.

The Whitten patent, with the exception of a fugitive instance, seems not to have been put into practical use, although it contains some highly valuable ideas. I am satisfied that Conner was working independently on the problem when he learned of the Whitten patent, and purchased it solely for the reason stated by him, namely, to protect what he regarded as an invention on his part. The so-called Conner machine seems to possess the characteristics claimed for it. Its operation is simple. The grain is placed in the hopper and when the chicken perches on or strikes its body against the prong or roost, the grain comes through in an amount limited by the movement of the chicken. The grain is protected from the elements and from animals. The chicken must earn its feed and thus get exercise, and waste is prevented because

[1] Note.—See patent to Pope, No. 65,004, May 21, 1867, for a hog feeder; patent to Daniels, No. 110,015, December 13, 1870, for a horse feeder; patent to Stamberger, No. 137,390, April 1, 1873, for a machine for salting cattle; patent to Winterscheid, No. 177,778, May 23, 1876, on a machine for salting cattle; patent to Babcock, No. 369,155, August 30, 1887, for a machine for salting cattle; patent to Magoon, No. 484,442, October 18, 1892, on machine for horse feeding; patent to Frese, No. 656,453, August 21, 1900, for a salt feeder.

the machine does not require human regulation, but operates automatically and practically to the extent desired by the poultry. The machine may be made in different sizes to meet the varying ages of the chickens, and is capable of easy shipment. So far as the record discloses, and as the experiments in the court room demonstrated, the machine seems to be without a mechanical defect, and was undoubtedly the first practical device which met the various requirements of this art above referred to.

Conner displayed his machine at the New York Poultry Show, during the Christmas holidays of 1908–1909, and sold some at that time. He has not done a large business in these machines since then, but there is nothing to show that his limited business has been due to any defect in his machine.

The defendant is a business house in the city of New York which has been selling the alleged infringing device of the Norwich Automatic Feeder Company, of Norwich, Conn.

Testimony was adduced by the defendant to show ability to sell the alleged infringing device as against the Conner but, as the defendant's witness declined to state its business arrangements, it may be that the defendant had a more favorable contract with the Norwich Company than with complainant, and it may also be that the "bait bar" of the Norwich machine seems more attractive and useful to the purchasing public than the roost or prongs of the Conner. The Norwich may also appear to be a more finished piece of workmanship than the Conner. All of these considerations, however, may be disregarded in determining the validity of the Whitten and Conner patents and the question as to whether the Norwich infringes.

The claims of the Whitten patent sued on are Nos. 1 and 2 as follows:

"1. In a poultry feeder, the combination of (1) a supply hopper, (2) a rotary upright or standard having roosts thereon, (3) a deflector on the upper portion of said upright or standard, and (4) a feed disk upon said upright and within the hopper, substantially as described.

"2. In a poultry feeder, the combination of (1) a rotary upright or standard, (2) a hopper, and (3) a feed disk connected to the upper end of said upright or standard and coacting with the hopper, said upright or standard having impelling means thereon, substantially as described."

The defects of Whitten are that the roosts cannot be raised or lowered from the ground to accommodate the requirements of condition and size of fowl, and the adjustment of the disk is such that feed would be wasted however the disk is adjusted from the bottom of the hopper. The Whitten also has an adjustable feed for the poultry keeper from day to day, which it is fair to assume would waste feed and such an adjusting device would be a defect.

The question as to the Conner patent is whether it was anticipated by Whitten or shows invention over Whitten. The claims sued on are Nos. 1, 7, and 16 as follows:

"1. A feeder and exerciser for poultry comprising (1) a feed hopper, (2) a feed disk, and (3) a rod for rotating the disk, having means whereby the rod may be rotated by the poultry thereon and said rod being vertically adjustable in the disk."

"7. A feeder and exerciser for poultry comprising (1) a feed hopper having a central opening and a series of openings surrounding the central opening, (2) a feed disk having a sleeve depending into the central opening and radial ribs on its under side; and (3) a rod for rotating the feed disk, operable by the poultry."

"16. A feeder and exerciser for poultry comprising (1) a feed hopper having an annular series of openings, (2) a feed disk arranged on the bottom of the hopper and having radial ribs on its under side for feeding material through said openings, and (3) means operated by the poultry for rotating the disk."

Conner provides a series of feed holes, while Whitten has but one feed hole divided into parts, and the disk of Conner has been so constructed with relation to the holes, and the means for agitating the disk, that these elements, with the others in the combination, have brought about automatic operation without human regulation, the only duty of the chicken keeper being to fill the hopper from time to time as necessity requires. Even though what Conner did may seem slight from a mechanical standpoint, nevertheless, he accomplished a new result and produced, so far as this record discloses, for the first time, a practical chicken feeder and exerciser, simple in operation, which accomplished all of the purposes sought to be attained in a machine of this kind in this art.

It remains only to consider whether the Norwich has infringed. As I gather the contention of defendant, the basic difference claimed to distinguish these machines is that the Norwich operates by gravity and is the descendant of old devices referred to supra, while gravity does not play any part in the Conner machine, but the result is there attained by the construction and operation of the feed disk. The defendant insists that it employs an "agitator," and that complainant employs a "feed disk," and that these are different instrumentalities.

The Norwich machine may be described in the phraseology of the claim of the Enos patent, No. 952,793, March 22, 1910 (owned by the Norwich Company, and the application for which was filed March 20, 1909, after Conner's exhibit at the New York Poultry Show) as follows:

"A poultry feeder comprising a hopper having a relatively small opening at its base, a cap having circularly arranged openings for closing said opening, a cut-off slide for said circularly arranged openings, a perforated disk mounted in said cap and spaced from its bottom, a rotatable element depending from said disk and rigidly attached thereto, a bait on said element, and pins depending from said disk and arranged in concentric series with said circularly arranged openings."

Whitten—Norwich. It is urged that the Norwich lacks the last three elements of claim 1 of the Whitten combination. It seems to me, however: (a) That the depending rod of Norwich is the equivalent of the rotary upright or standard of Whitten; (b) that the deflector in the Norwich is the equivalent of Whitten's; and that (c) the "agitating" disk in Norwich is the equivalent of the feed disk of Whitten.

Claim 2 of Whitten speaks of the coaction of the feed disk with the hopper, and defendant contends that such coaction is lacking in defendant's device. In this, I think, defendant is in error, but, in any event,

the relation between the "agitator" and the hopper is such that too fine a distinction should not be drawn to negative equivalency.

Conner—Norwich. Both feed by gravity aided by intermittent movement of the feed mechanism. Gravity may play a more important part in the Norwich than in the Conner, but degree is unimportant. The Norwich has a hopper, holes in the bottom, a disk over the holes carried on an upright rod adjustable in the disk, with means on the lower end to give the push or jerk of the poultry on the ground below. The Conner has radial ribs on the under side of the disk, while the Norwich has pins depending from the disk—ribs and pins performing in their respective relations the same function and accomplishing the same result. The Norwich has a shut-off which may close or partly close the holes in the bottom of the hopper or leave them open, but except as interfered with in the Norwich by a valve, the operation of both machines is substantially the same.

I agree with complainant that his structural adjustment of the disk to the holes in the bottom of the hopper, so that it will feed all kinds and sizes of grain without readjustment, and will not feed when the machine is at rest, and will feed by natural motions of the chickens on the ground below without waste, and without mechanical defect in construction or in operation, by mechanical means not found in any other patent except Whitten, is still a marked improvement on Whitten. I conclude, therefore, that the Whitten and Conner patents are valid, and that the claims here in issue are infringed.

The Whitten patent having expired, complainant may have a decree for an injunction as to the Conner, with the usual accounting for infringement of both Whitten and Conner, with costs.

Settle decree on five days' notice.